## Commonwealth v. Wingel et al.

76

*Arthur W. Bean,* for Commonwealth.

*Wellington H. Rosenberry, Jr.,* for defendants.

DANNEHOWER, J., March 17, 1938.—On Sunday, November 14, 1937, three members of the Pennsylvania Motor Police, accompanied by two enforcement officers of the Liquor Control Board, entered the clubhouse of the Oak Terrace Country Club, Horsham Township, Montgomery County, Pa. After they had seen slot machines being used for gambling purposes and had purchased drinks of intoxicating liquors, although they were not members of the club, they arrested on view defendants, Harry G. Wingel, president of the club, and the bartender, Lewis T. Smith, Jr. These defendants were immediately taken before a justice of the peace. Informations, charging both defendants with keeping a gaming house and violations of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, as amended, were duly executed. Thereupon, defendants waived hearing and entered bail

with surety for their appearance at the next term of quarter sessions court.

On January 21, 1938, before indictments were found, defendants presented separate petitions for discharge from custody and release of recognizance. The petitions were identical in substance and alleged that defendant "was wrongfully and unlawfully arrested, in that the arrest was made on Sunday, and that the offenses charged were not preceded by a breach of the peace; said arrest being contrary to the provisions of the Act of Assembly of 1705, sec. 4".

On each petition a rule was granted upon the district attorney to show cause why petitioner should not be discharged from custody and be released from his recognizance.

On January 28, 1938, separate answers to said petitions were filed by the district attorney. The answers allege, in substance, that as to the arrest on the charge of setting up and keeping a gaming house, the act gives authority to arrest without the issuance of a warrant; that as to the arrest for violation of the Pennsylvania Liquor Control Act, supra, such violation of selling to nonmembers amounted to a breach of the peace; that true bills against defendants on both charges were found by the grand jury on January 24, 1938; that after entering bail it is too late to raise the question of the legality of the arrest; and that said rule should be discharged.

These rules were argued before the court in banc, and are now pending.

The admitted facts, therefore, raise the following question: Where police officers see gambling and illegal sales of liquor on Sunday and arrest the offenders without warrants on view, on Sunday, and on the same day defendants waive a hearing and enter bail for court, are they entitled to discharge from custody and release from their recognizances on the ground of the illegality of arrest?

As a general rule and according to common law, an arrest may be made for a criminal offense, either with or

without a warrant, on any day and at any time of the day or night: See "Arrest", 5 C. J. 421, sec. 56; and "Sunday", 60 C. J. 1140, sec. 95. The Constitution of our State would seem to require all arrests to be made with a warrant issued on probable cause and supported by oath or affirmation, but there are exceptions arising from necessity. The law of our Commonwealth authorizes a peace officer to arrest on view without a warrant when a felony has been committed in his presence, or when the person to be arrested has committed a felony although not in the presence of the officer, or when a felony has in fact been committed and he has reasonable ground to believe that the person to be arrested has committed it. An officer is justified in arresting a person for a misdemeanor without warrant, when the offense is committed within his view, or immediately after its commission or in fresh pursuit of the offender. However, the offense for which the accused is arrested must amount to a breach of the peace: Commonwealth v. Collins, 15 Phila. 383 (1881); Commonwealth v. Jayne, 11 Pa. Superior Ct. 459. If it does not, even though committed in view of the officer, he cannot apprehend without warrant: Commonwealth v. Ridgeway, 2 Dist. R. 59; Commonwealth v. Krubeck, 8 Dist. R. 521.

In the instant case, defendants were arrested for committing two misdemeanors, gambling and illegal sale of intoxicating liquors on Sunday to nonmembers of a club. These offenses were committed in the presence of the police officers. Concerning the arrest on view without a warrant on Sunday upon the charge of gambling, the Act of March 31, 1860, P. L. 382, sec. 60, provides:

"It shall and may be lawful for any sheriff, constable or other officer of justice, with or without warrant, to seize upon, secure and remove any device or machine of any kind, character or description whatsoever, used and employed for the purposes of unlawful gaming as afore-

said, and to arrest, with or without warrant, any person setting up the same."

This act, therefore, gives authority for an arrest, with or without a warrant, regardless of whether the offense amounts to a breach of the peace or not.

Concerning the other misdemeanor, the sale of intoxicating liquors on Sunday to nonmembers of a club, in our opinion, the Pennsylvania Liquor Control Act stamps an offense thereunder a breach of the peace.

Section 3 provides:

"This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

Section 608 provides:

"(a) Any room, house, building, boat, vehicle, structure, or place, except a private home, where liquor is possessed, sold, offered for sale, bartered, or furnished in violation of this act, and all liquor and property kept or used in maintaining the same, is hereby declared to be a common nuisance; and any person who maintains such a common nuisance shall be guilty of a misdemeanor, and, upon conviction thereof, shall be subject to the penalties hereinafter provided."

From the foregoing provisions, a violation of the Liquor Control Act amounts to a breach of peace within the meaning of this act, and an arrest made on Sunday, therefore, is valid. Otherwise, a hotel liquor licensee could sell liquor all day Sunday without fear of being arrested on that day. He could then disappear during the week and return again the following Sunday to sell liquor, contrary to law, and no warrant could be served upon him on Sunday. While there is some authority to the contrary, that the sale of liquor on Sunday without a license

is not a breach of the peace: Commonwealth v. De Puyter, 16 Pa. C. C. 589 (1885) ; we are inclined to follow the decision of our own court in Commonwealth v. Geibel, 45 Montg. 126 (1929).

Defendants rely upon section 4 of the Act of 1705, 1 Sm. L. 25, 44 PS §1, which provides:

"That no person or persons, upon the first day of the week, shall serve or execute, or cause to be served or executed, any writ, precept, warrant, order, judgment or decree, except in cases of treason, felony, or breach of the peace; but that the serving of any such writ, precept, warrant, order, judgment or decree, shall be void, to all intents and purposes whatsoever; and the person or persons so serving or executing the same, shall be as liable to the suit of the party grieved, and to answer damages to him for doing thereof, as if he or they had done the same without any writ, precept, warrant, order, judgment or decree at all."

This statute prohibits the serving of a warrant on Sunday, except in case of treason, felony, or breach of the peace, and subjects the person serving the same to a civil action for damages, as if he had no warrant at all. In the instant case, defendants were arrested without warrant on view, upon the charge of gambling, by virtue of the authority contained in the act to arrest without a warrant, and upon the violation of the Liquor Control Act, because it amounted to a breach of the peace.

However, the controlling reason why defendants should not be discharged from custody and released from their recognizances is, because they waived a hearing and voluntarily entered bail for court. This, they had the undoubted right to do in accordance with the Act of March 24, 1937, P. L. 105, sec. 1, 19 PS §58, which provides:

"That in all bailable criminal or quasi criminal prosecution, including desertion or nonsupport and surety of the peace cases, where the party accused is entitled to bail

and recognizances with surety or sureties thereon, or is entitled to deposit in lieu thereof current funds of the United States, such bail and recognizances, or such deposit in lieu thereof, may be, and if offered shall be accepted and entered on Sunday by the person or official authorized by law to take such bail."

Granting, for the purpose of argument only, that the arrests were irregular, defendants by entering into recognizances for their appearance and trial in court waived any defects or irregularities in the arrests, the reason being that, after having entered bail, defendants are then held by force of the recognizances, and not by virtue of the arrests: Commonwealth v. Kipnis, 26 Dist. R. 927; Commonwealth v. Keegan (No. 1), 70 Pa. Superior Ct. 436. Jurisdiction of the person was obtained by consent and waiver.

Furthermore, while defendants were arrested on November 14, 1937, they did not file their petitions for discharge until January 21, 1938, only three days before the grand jury met. The petitions did not request a stay of proceedings, nor did the rule granted thereon contain an order for a stay of proceedings or act as a supersedeas. On January 24, 1938 (four days before the return day of the rule) the grand jury returned true bills against both defendants. The grand jury had already found true bills before the answer to the rule had been filed, and before the argument. If these rules were made absolute, and defendants discharged and released from their recognizances, the true bills of indictment would still be in existence, and at the time of trial thereon, bench warrants would issue if defendants failed to appear. No matter what disposition is made of these rules, the indictments still exist.

And now, March 17, 1938, for the foregoing reasons, defendants' rules to show cause why they should not be discharged from custody and released from their recognizances, are hereby discharged.